**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3866-14T3

MFC RESOURCES, INC.; MFC
COMMODITIES GMBH; MFC
COMMODITIES U.S.A., L.P.,
INC.; MFC COMMODITIES U.S.A.,
G.P., INC.; and POSSEHL MEXICO,
S.A. D.E. C.V.,

    Plaintiffs-Appellants,

v.

JUERGEN HOMANN,

    Defendant-Respondent,

and

YAN CHEN; JEFF TIANG; JOHN
HOYING; CJAM CORPORATION, INC.;
THYSSENKRUPP METALLURGICAL
PRODUCTS GMBH; and THYSSENKRUPP
MATERIALS NA, INC.,

    Defendants.

_____

Argued November 16, 2016 — Decided July 11, 2017

Before Judges Fuentes, Simonelli and Carroll.

On appeal from the Superior Court of New
Jersey, Law Division, Bergen County, Docket
No. L-9612-13.

Christopher P. Massaro argued the cause for appellants (Cole Schotz, P.C., and Charles Michael (Steptoe & Johnson LLP) of the New York Bar, admitted pro hac vice, attorneys; Mr. Massaro and Mr. Michael, of counsel and on the briefs).

Mark A. Berman argued the cause for respondent Juergan Homann[1] (Hartmann Doherty Rosa Berman & Bulbulia, LLC, attorneys; Mr. Berman, Jeremy B. Stein, and Kelly A. Zampino, on the brief).

PER CURIAM

In this contract dispute, plaintiffs MFC Resources, Inc., MFC Commodities GmbH, MFC Commodities, L.P., Inc., MFC Commodities U.S.A., G.P., Inc., and Possehl Mexico, S.A. D.E. C.V. (collectively, MFC)[2] appeal from: (1) the September 19, 2014 order, which denied their motion to dismiss the counterclaim filed by defendant Juergen Homann; (2) the September 19, 2014 order, which granted Homann's motion to compel discovery; (3) the November 21, 2014 order, which enforced a settlement between MFC and Homann; and (4) the March 19, 2015 order and judgment. We affirm the September 19, 2014 order, which granted Homann's motion to compel discovery, but reverse all other orders and remand for further proceedings.

---

[1] Respondent's brief purports to represent Alumina Trading Company (Alumina). Alumina was not a named defendant but was added as a counterclaimant pursuant to Rule 4:7-6.

[2] We shall sometimes refer to defendant Possehl Mexico, S.A. D.E. C.V. as Possehl.

A-3866-14T3

We derive the following facts from the record.  Homann was the sole owner of ACC Resources, Co., L.P. (ACC), a commodities trading firm organized as a limited partnership under Pennsylvania law, with its principal place of business in New Jersey.  Through his ownership in ACC, Homann indirectly owned a 30% interest in Alumina, a New Jersey general partnership that had a 54.95% ownership interest in Possehl, a commodities trading firm located in Mexico.

MFC entered into a purchase agreement with Homann to purchase 70% of Homann's interest in ACC.  As part of the transaction, the parties executed another agreement whereby Homann had an option to require MFC to purchase his remaining 30% interest in ACC, and MFC had a had an option to purchase that interest.  MFC could also purchase that interest upon Homann's breach of the purchase agreement.  The parties agreed that Homann would remain the CEO of ACC after the sale.  The parties also executed a third agreement, whereby Homann would sell Alumina's 54.95% ownership interest in Possehl to MFC.

At the closing, MFC paid over $20,000,000 to acquire 70% of Homann's 30% interest in ACC and Alumina's 54.95% interest in Possehl.  Thereafter, MFC incorporated ACC in Nevada by merging it into ACC Resources, Inc., a newly formed Nevada corporation.

MFC renamed the company MFC Resources and continued operating the new company out of New Jersey offices.

Homann remained CEO of MFC Resources after the closing, but was terminated in May 2013. MFC claimed that Homann threatened to leave for a competitor, ThyssenKrupp Metallurgical Products (TK Met Pro), and induced certain MFC Resources employees, Yan Chen and Jeff Tiang (the TK defendants) to leave MFC Resources for TK Met Pro.

In October 2013, MFC allegedly exercised its option to purchase Homann's remaining interest in ACC for approximately $1.3 million. Homann disputed the validity of MFC's attempt to exercise the option, and claimed the purchase price was approximately $12.8 million.

MFC filed a complaint against Homann, asserting claims of breach of contract and specific performance; breach of the implied covenant of good faith and fair dealing; breach of fiduciary duty; aiding and abetting breaches of fiduciary duty; tortious interference; misappropriation of confidential information; and conspiracy. Homann filed a counterclaim, asserting claims of breach of contract; breach of the covenant of good faith and fair dealing; conversion; fraud; fraudulent inducement; conspiracy; shareholder oppression; and breach of fiduciary duty.

Homann filed a motion to compel discovery, and MFC filed a

motion pursuant to Rule 4:6-2(e) to dismiss with prejudice the counterclaims for fraud, fraudulent inducement, shareholder oppression, and breach of fiduciary duty. While the motions were pending, the parties engaged in settlement discussions, after which Homann filed a motion to enforce an alleged oral settlement agreement.

In support of his motion to enforce the oral settlement agreement, Homann certified that MFC's attorney, Charles Michael, Esq., proposed holding a settlement meeting in New York on September 10, 2014, and his attorney, Mark Berman, Esq., sought written confirmation that whoever attended on MFC's behalf had the authority to settle. Michael responded, "Yes, of course." Berman also informed Michael that by agreeing to meet to discuss settlement, Homann was not also agreeing to delay his pending motion to compel discovery. The meeting did not occur.

In opposition to Homann's motion to enforce, MFC's CEO Gerardo Cortina and CFO Samuel Morrow certified that on September 16, 2014, they met with Homann in New York to discuss settlement, but did not reach an agreement. At the end of the meeting, Homann suggested meeting again two days later. The parties agreed to hold that meeting without counsel present. Homann said Kevin Colosimo, Esq. would accompany him to the meeting. Colosimo was an attorney who was not involved in the litigation, but who had

been advising Homann on the case.[3]  Homann certified that Cortina agreed to proceed with Colosimo present, and Cortina advised him that he had informed Michael that Colosimo would attend the meeting.  Cortina denied this.

On September 18, 2014, Homann, Colosimo, Cortina, and Morrow met in New York to continue settlement negotiations.  Homann certified that at no time during the meeting did either Cortina or Morrow advise him or Colosimo that they lacked authority to settle.  In fact, when Homann asked them about this, Morrow said that he and Cortina were "the two highest ranking officers in the company."

Cortina certified that the meeting was productive and the parties established a framework for a possible settlement.  Morrow certified that the parties discussed various elements and setoffs relating to the underlying purchase price dispute and reviewed each of the elements in some detail, "often disagreeing quite vigorously."  For certain items and setoffs, the parties discussed values and terms that could be used as part of an overall settlement calculation, and for others they could not reach a working consensus and left matters open.  Under the framework they

---

[3]  Colosimo was a trustee of a trust that held an interest in Alumina and a signatory on some of the relevant documents.  He was not admitted to practice law in New Jersey or New York.

discussed, MFC would pay Homann $5.5 million, plus at least $1 million relating to overdue receivables dating back to Homann's ownership of ACC, and Homann would work as a paid consultant for MFC Resources for two years.

Morrow and Cortina certified that several critical items remained open, even on a working basis, including whether: (1) MFC would release Homann from certain indemnification obligations; (2) MFC would release the TK defendants as part of its settlement with Homann; and; and (3) whether Homann would be able to claim certain of the company's losses on his tax returns. During the meeting, no one said or otherwise indicated that the matter was settled or that the terms being negotiated were final. Morrow and Cortina also certified that the parties never reached a settlement agreement and they did not intend any settlement to be final unless and until they resolved several important open points, drafted a formal settlement document, and received approval from the board of directors.

On September 19, 2014, Michael and Berman appeared for oral argument on the motions to compel discovery and dismiss the counterclaim. Prior thereto, Berman sent Michael an email, stating: "Hopefully the case settles on Sep 18 [2014] and everyone is happy. If the case does not settle, we submit the discovery disputes to the [c]ourt on Sep 19[.]"

Following oral argument on September 19, 2104 the motion judge denied MFC's motion to dismiss the counterclaims as untimely, and found that the counterclaims were suggested by the facts. The judge denied the motion without prejudice so MFC could file a motion for summary judgment at the conclusion of discovery. The judge also granted Homann's motion to compel discovery.

After oral argument, the judge met with counsel to inquire about the possibility of settlement. No one advised the judge that the matter had settled. To the contrary, Berman advised the judge that the parties had made progress toward, but had not reached, a final settlement.

Later that day, Colosimo circulated a document entitled "Indicative Term Sheet for Settlement Agreement," which allegedly contained the settlement terms (the Term Sheet). According to Homann, Colosimo circulated the Term Sheet at Cortina's and Morrow's suggestion to memorialize the material terms of the parties' oral settlement agreement reached on September 18, 2014. Colosimo's email with the attached Term Sheet stated as follows:

> In an effort to be simple, I've attached a somewhat rudimentary Term Sheet following my notes from yesterday's meeting. We could wordsmith the Term Sheet to death, I'm sure, but I think the better course is to put the lawyers to work on a more formal settlement agreement, etc.
> Let me know if this captures the spirit and big picture. I'm sure there are details to

> flesh out in the drafting process but I'm not
> sure that's needed here. If there are changes
> needed, let me know. Otherwise, we can put
> signatures lines on it and get the lawyers to
> work on the final agreement.

Cortina and Morrow certified that the Term Sheet was not consistent with the parties' discussion on September 18, 2014. For example, three unresolved critical items were treated as final: Homann's indemnification obligations; release of the codefendants; and Homann taking the company's tax losses, were treated as final in the Term Sheet and in Homann's favor.

Michael certified that in the days following circulation of the Term Sheet, no one acted as if the case was settled, and Homann did not advise him or anybody associated with MFC that he considered the case settled. Notably, on September 24, 2014, Berman forwarded the order granting Homann's motion to compel discovery to Michael, with a cover letter stating, "Please be guided accordingly[,]" meaning discovery would continue.

Michael had previously advised Frank Coppa, Esq., counsel for defendants John Hoying and CJAM Corporation, that his clients would likely be released from the litigation if MFC reached a settlement with the TK defendants. On September 22, 2014, Coppa emailed Michael to follow up on the settlement meeting, stating, "were you able to make any headway on Friday[, September 19, 2014]?" The next day, Michael responded, "Yes. We have a

A-3866-14T3

handshake deal with TK — have a separate one with Homann, too. Goal is to wrap everything up in the next couple of weeks."

After not hearing from Cortina for a week after Colosimo circulated the Term Sheet, Homann called Cortina. According to Homann, Cortina advised him for the first time that MFC would not recognize his authority to enter into the settlement agreement on behalf of MFC, and that former MFC CEO Michael Smith would not ratify the settlement agreed upon by Homann, Cortina, and Morrow on September 18, 2014.

Cortina certified that MFC had discussed internally how to respond to Colosimo's Term Sheet, and ultimately decided to proceed with the litigation. On September 29, 2014, Michael notified Berman that the Term Sheet did not reflect the parties' discussions, and that MFC would proceed with the litigation.

The TK defendants' attorney, Thomas R. Valen, Esq., certified that on September 30, 2014, Michael called him and told him MFC's settlement with his clients was contingent upon MFC's settlement with Homann, and MFC "previously had some sort of an agreement with Homann but it had fallen through." Michael also told Valen that if MFC's settlement agreement with the TK defendants were to proceed, MFC would require a provision allowing MFC to take discovery from TK Met Pro to use in their litigation against Homann. Valen responded it was his position that the parties had

A-3866-14T3

already reached an enforceable settlement with his clients that was not contingent upon MFC reaching a settlement with Homann.

Homann filed a motion to enforce the alleged oral settlement agreement that he claimed the parties reached during the September 18, 2014 meeting.  He requested oral argument and an evidentiary hearing.  In opposition, MFC argued, in part, that the negotiations were only preliminary; the parties never reached a settlement agreement; there were several unresolved critical terms, including the release of Homann's indemnification obligations; and the parties never intended to be bound unless and until they executed a more formal agreement.

On November 21, 2014, the motion judge entered an order and written opinion, granting Homann's motion without oral argument or an evidentiary hearing.[4]  The judge found there were no genuinely disputed facts which would materially impact the enforceability of the settlement agreement.  The judge also found that Homann manifested his intent to be bound by the parties' oral settlement agreement, explaining as follows:

> Berman['s] appearance in court on the morning of September 19, 2014, wherein he represented that settlement had not been reached, does not disturb this finding. . . . Berman certified to the [c]ourt that prior to the reduction of the oral settlement to writing, he felt there

[4]  The judge revised the written opinion on November 24, 2014, and May 28, 2015, to correct clerical errors.

was a risk that MFC would renege. From the time stamps on . . . Colosimo's [emails], it is clear that there was not even time prior to the [c]ourt's entertaining of oral argument on the outstanding motions in this matter for counsel to draw up the Term Sheet and send it to the parties. To bar Homann from seeking to enforce an agreement he purportedly reached because an attorney who was not present and not involved in the negotiation sought adjudication of outstanding motions would be inequitable. Furthermore, the [emails] between [Berman] and [Michael] regarding the authority of Morrow and Cortina to settle indicates that Homann objectively and reasonably believed that MFC's representations at that meeting would settle the litigation, even without a written agreement.

The judge further found that MFC had manifested an intent to be bound by the oral settlement agreement, explaining as follows:

MFC does not dispute that it then manifested an intent to be bound by the vast majority of the material terms cited above. They instead try to characterize the settlement as "a framework for settlement that was never completed," . . . on the basis that either some ancillary terms remained open, or that a formal writing was not actually signed. . . . Indeed, as discussed above, the [c]ourt has found that this settlement did in fact contain the essential terms of the parties' litigation. Certifying a subjective belief after the fact does not alter the fact that a party has manifested an intent to be bound to a settlement. . . . Their manifestations clearly bound MFC just as if they actually signed a written agreement created by their own counsel. Their presence at the settlement negotiations, the terms agreed upon there, and their certifications indicating a significant acceptance of the material terms of the

12

> settlement agreement all establish for this [c]ourt that MFC, through Cortina and Morrow, intended to be bound on September 18, 2014. Moreover, their belief, some five days after the fact, that they had reached a "handshake deal," confirms that the contents of . . . Colosimo's September 19, 2014 [email] were accurate, insofar as they demonstrated that a formal writing was contemplated, for which the material terms had been reached. . . . Moreover, the failure of the parties to reduce the agreement to a more definite writing cannot be fatal to the performance obligations of the parties when those obligations are clear from the evidence presented.

The judge ordered the parties to negotiate in good faith and execute a written settlement agreement implementing the material terms of the settlement, as contained in the Term Sheet.

The parties attempted to negotiate the settlement in good faith, but were unable to agree on one critical term: Homann's indemnification obligations. Although Homann had argued that the indemnity issue was not an "essential" term of the settlement, he refused to execute a formal written settlement agreement unless MFC agreed to waive any indemnification obligation.

The parties cross-moved for entry of final judgment using their respective forms of order: MFC's version preserving Homann's indemnification obligations, and Homann's version releasing them. At oral argument, Berman insisted that releasing his indemnification obligations was a "material term" of the settlement.

On March 19, 2015, the judge entered an order and written opinion granting judgment in Homann's favor, awarding him $7.1 million, and dismissing the parties' respective claims with prejudice, except for MFC's claim for indemnification, which was dismissed without prejudice. In doing so, the judge rejected Homann's argument that the parties had agreed to dismiss MFC's indemnification claims, stating as follows:

> In this case Homann is estopped from contending that a valid, binding, and complete settlement was not reached. As such, the [c]ourt ordered the parties to reduce their oral settlement to writing, and ruled that the issue of indemnification was "ancillary." Indeed, Homann agreed with the court then[.]
>
> [Homann] has now reversed course . . . . It was clear to this [c]ourt upon . . . Homann's original motion [to enforce settlement], and it remains clear at this point, that the parties settled this matter by reaching an oral agreement upon all material terms. In good faith compliance with this [c]ourt's Order effectuating that oral agreement, the parties attempted to negotiate further and to fully implement those terms deemed material by the [c]ourt. Indemnification was not among those terms. At no point did this [c]ourt find that MFC bound itself to release . . . Homann from his contractual indemnification obligations.

The judge declined to waive obligations that Homann previously said were immaterial to settlement, and noted that the indemnification issue, which amounted to "an inchoate concern over speculative future liability did not prevent final resolution of

14

this lawsuit."

## II.

MFC contends, in part, that the judge erred in finding the parties reached an enforceable settlement agreement. MFC argues the evidence was insufficient to establish that the parties intended to be bound or had agreed to the essential terms of the alleged settlement. MFC posits that the court should have held an evidentiary hearing to resolve the factual disputes surrounding the alleged settlement. We agree.

A settlement of a legal claim between parties is a contract like any other contract, Nolan v. Lee Ho, 120 N.J. 465, 472 (1990), "which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div.), certif. denied, 94 N.J. 600 (1983) (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)). That the agreement was oral, instead of written, is of no consequence. Id. at 124. "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div.), certif. denied, 134

15

N.J. 477 (1993) (quoting <u>Bistricer v. Bistricer</u>, 231 <u>N.J. Super.</u> 143, 145 (Ch. Div. 1987)). We will not interfere with a trial judge's factual findings and conclusions concerning a settlement agreement that are amply supported by the record. <u>Id.</u> at 597.

The burden of proving that the parties entered into a settlement agreement is upon the party seeking to enforce the settlement. <u>Amatuzzo v. Kozmiuk</u>, 305 <u>N.J. Super.</u> 469, 475 (App. Div. 1997).

> On a disputed motion to enforce a settlement, as on a motion for summary judgment, a hearing is to be held to establish the facts unless the available competent evidence, considered in a light most favorable to the non-moving party, is insufficient to permit the judge, as a rationale factfinder, to resolve the disputed factual issues in favor of the non-moving party.
>
> [<u>Id.</u> at 474-75.]

However, not every factual dispute on a motion requires a plenary hearing; a plenary hearing is only necessary to resolve a genuine issue of a material fact. <u>Eaton v. Grau</u>, 368 <u>N.J. Super.</u> 215, 222 (App. Div. 2004). We are satisfied that there are material issues of fact surrounding the alleged settlement requiring a plenary hearing.

In finding there were no genuinely disputed facts, the judge incorrectly considered the evidence in the light most favorable to Homann, focusing on evidence supporting the finding of an

enforceable oral settlement agreement and overlooking or minimizing the significance of evidence supporting the opposite conclusion. First, the judge focused on Colosimo's decision to circulate the Term Sheet, which allegedly memorialized the parties' oral settlement agreement. However, he failed to consider that Colosimo admitted the Term Sheet was merely his own "somewhat rudimentary" notes from the meeting on September 18, 2014.

Further, the judge considered MFC's failure to respond to Colosimo's email as evidence that no changes were needed. However, the judge's extrapolation is based solely on one sentence taken out of context from the entire paragraph, which reads:

> Let me know if this captures the spirit and big picture. I'm sure there are details to flesh out in the drafting process but I'm not sure that's needed here. If there are changes needed, let me know. Otherwise, we can put signatures lines on it and get the lawyers to work on the final agreement.

The sentence on which the judge focused, "If there are changes needed, let me know[,]"is followed by a request to sign the Term Sheet if no changes were necessary. Since MFC did not sign the Term Sheet, it could not be assumed that MFC believed the Term Sheet was acceptable as is. To the contrary, and considering this evidence in a light most favorable to MFC, MFC did not sign the Term Sheet, indicating it was unacceptable to MFC.

Thus, when Colosimo's email is read in its entirety, it is

clear he was seeking MFC's approval of the terms contained in the Term Sheet. Indeed, the first sentence asked MFC to let him know if the Term Sheet "captures the spirit and big picture" of the alleged settlement agreement. The judge did not consider that MFC's failure to respond immediately to that request can be viewed as evidence that MFC did not believe the Term Sheet captured the "spirit and big picture" of the settlement negotiations. The judge also failed to consider that approximately ten days after receiving the email, MFC advised Homann that the Term Sheet was not consistent with the parties' settlement negotiations.

MFC's lack of immediate response to Colosimo's email and the Term Sheet, when taken in the light most favorable to MFC, indicates that the parties were still negotiating the terms of a settlement and that MFC did not agree to the terms in the Term Sheet. Nowhere in Colosimo's email does it state that the matter had been settled or that both parties had agreed to certain settlement terms. Rather, Colosimo sent MFC a "rudimentary" Term Sheet for which he sought MFC's approval.

Second, the judge focused on Michael's e-mail to Coppa wherein he stated that MFC had a "handshake deal" with Homann. The judge failed to consider that Michael did not state a belief that MFC had entered into a settlement agreement with any party, but rather, stated the parties had made "headway." Thus, placed into proper

context, and viewed in a light most favorable to MFC, the e-mail indicates that MFC did not believe the matter was settled.

Third, the judge downplayed the fact that Berman specifically represented that the parties had not reached a settlement. The judge rejected Michael's explanation of why the parties proceeded with the cross-motions (that no settlement had been reached) and accepted Berman's explanation (that "he did not want to run the risk of further delaying resolution of motions that were fully briefed" and that he felt there was a risk that MFC would renege).

The judge also focused on the fact that "there was not even time prior to the [c]ourt's entertaining of oral argument on the outstanding motions in this matter for counsel to draw up the Term Sheet and send it to the parties." The judge then concluded that to bar Homann from seeking to enforce an agreement he purportedly reached because an attorney who was not present and not involved in the negotiation sought adjudication of outstanding motions would be inequitable.

However, the judge failed to consider that if the parties had reached an enforceable oral settlement agreement at the September 18, 2014 meeting, it would have been unnecessary for counsel to draft and circulate a Term Sheet before informing the judge that the parties had settled. Furthermore, by focusing on Berman's excuse for why he informed the judge that the parties had not

reached a settlement, the judge overlooked the significance of Michael's action or inaction. If MFC actually believed that the matter was settled, it is reasonable to assume that Michael would have advised the judge that the parties had settled, or at the very least corrected Berman's representation that they had not. While Berman may have had his reasons for proceeding with oral argument, there was no legitimate reason why MFC would have wanted to proceed if it actually believed the matter had settled.

When taken in the light most favorable to MFC, Berman's representation to the judge that the parties had not entered into a settlement agreement, and Michael's failure to inform the judge of any such settlement or to correct Berman's representation, indicates that the parties did not enter into an enforceable oral settlement agreement on September 18, 2014.

Fourth, the judge found that the Term Sheet contained the essential terms of the settlement on which the parties agreed. However, the record does not support that finding. Cortina and Morrow certified that the Term Sheet was "not consistent" with the parties' settlement discussions; MFC did not intend any settlement negotiated to be final; and no final settlement had been agreed to by the parties. When taken in the light most favorable to MFC, Cortina's and Morrow's certifications indicate that the parties did not enter into an oral settlement agreement on September 18,

2014, and strong evidence that MFC did not intend to be bound by the parties' settlement negotiations.

Lastly, the judge found that Homann had manifested his intent to be bound by the oral settlement agreement. The judge noted that Homann had voiced some concern over "indemnification requirements," but concluded that was not an essential term of the settlement. However, there was evidence that Homann did not intend to be bound by the terms of the Term Sheet as well. Contrary to the judge's conclusion, Berman had insisted that releasing Homann's indemnification obligations was a "material term" of the settlement.

While the evidence could support the conclusion that the parties had entered into an oral settlement agreement, when taken in the light most favorable to MFC, evidence could support the conclusion that there was no "meeting of the minds" between the parties as to a settlement agreement. MFC claims it did not agree to the terms contained in the Term Sheet and did not intend to be bound by the settlement negotiations. At the very least, there were disputed issues of fact, as set forth in the parties' conflicting certifications, and therefore, the judge should have held an evidentiary hearing. Accordingly, we reverse and remand for an evidentiary hearing to determine whether there was an enforceable settlement agreement.

A-3866-14T3

III.

MFC contends that the judge erred by denying its motion to dismiss the counterclaims for shareholder oppression and breach of fiduciary duty.[5] MFC argues that the judge erred by finding the motion was untimely.

The defense of failure to state a claim upon which relief can be granted may be raised by motion or as an enumerated defense in an answer. Rule 4:6-2 provides as follows:

> Every defense, legal or equitable, in law or fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses, unless otherwise provided by R. 4:6-3, may at the option of the pleader be made by motion, with briefs:  . . . (e) failure to state a claim upon which relief can be granted. . . . If a motion is made raising any of these defenses, it shall be made before pleading if a further pleading is to be made. . . .

The comments to Rule 4:6-2 provide as follows:

> [Rule 4:6-2] identifies the six dispositive defenses which may be raised either by answer or by motion, but, if by motion, then before the party's required responsive pleading. . . . The rule must be read in conjunction with R. 4:6-3, which requires, as to defenses (b),

---

[5]  The judge also denied MFC's request to dismiss the counterclaims for fraud and fraudulent inducement. Because MFC did not address these claims in its merits brief, the issue is deemed waived. See Pressler & Verniero, Current N.J. Court Rules, comment 4 on R. 2:6-2 (2017); N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div.), certif. denied, 222 N.J. 17 (2015).

(c), and (d), that if initially raised by answer, a motion raising the defense must also be made within 90 days after service of the answer in which the defense was asserted. <u>Defenses (a), (e), and (f), whether raised by motion or answer, are required, on a party's application to be heard and determined before trial unless the court otherwise orders</u>.

[Pressler & Verniero, <u>Current N.J. Court Rules</u>, comment 1 on <u>R.</u> 4:6-2 (2017) (emphasis added).]

<u>Rule</u> 4:6-3 requires a party who initially stated a <u>Rule</u> 4:6-2(b), (c), or (d) defense in his or her answer to raise it by filing a motion within ninety days after service of the answer. However, <u>Rule</u> 4:6-2(a), (e), and (f) defenses do not have that ninety-day requirement, but the defenses must be "heard and determined before trial on application of any party, unless the court for good cause orders that the hearing and determination thereof be deferred until the trial." <u>R.</u> 4:6-3. Thus, <u>Rule</u> 4:6-2 contemplates that a party who raises Rule 4:6-2(e) defense in its answer will make an application to the court prior to trial.

MFC raised a <u>Rule</u> 4:6-2(e) defense in its answer, and filed motion to dismiss prior to trial, consistent with the Rule. Thus, the motion was not untimely and the judge erred by holding otherwise.

MFC also argues that the judge failed to conduct a choice of law analysis on Homann's counterclaims for breach of fiduciary

duty and shareholder oppression. MFC posits that New Jersey has adopted the internal affairs doctrine for choice-of-law purposes and, pursuant to that doctrine, Nevada law applies to Homann's counterclaims for shareholder oppression and breach of fiduciary duty.

Because the counterclaims suggested causes of action, we conclude the judge correctly determined they were adequate. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). However, because the judge failed to conduct a choice-of-law analysis, we reverse the denial of MFC's motion to dismiss the counterclaims for breach of fiduciary duty and shareholder oppression and remand for the court to conduct a choice-of-law analysis to determine whether New Jersey or Nevada law applied to those counterclaims.

IV.

Lastly, MFC contends that the judge erred in granting Homann's motion to compel discovery. MFC's argument, in its entirety, is as follows: "Finally, since the breach of fiduciary duty and shareholder oppression [counter]claims are the sole basis for . . . Homann's second discovery requests . . . this [c]ourt should likewise reverse the trial court's order compelling MFC to comply with those requests."

MFC provides no credible evidence and cites no legal authority

24                                              A-3866-14T3

to support its argument.  See State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977) (parties are obligated to justify their positions by specific reference to legal authority); Weiss v. Cedar Park Cemetery, 240 N.J. Super. 86, 102 (App. Div. 1990) ("The failure to adequately brief the issues requires it to be dismissed as waived").

In any event, the argument lacks merit.  "Generally, pursuant to Rule 4:10-2(a), parties may obtain discovery regarding any non-privileged matter that is relevant to the subject of a pending action or is reasonably calculated to lead to the discovery of admissible evidence."  In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 82 (2000).  "Our discovery rules are to be liberally construed because we adhere to the belief that justice is more likely to be achieved when there has been full disclosure and all parties are conversant with all available facts."  Ibid.

MFC admits that MFC's improper conduct, as Homann alleged in his counterclaim, is the same conduct on which he relied for his breach of contract counterclaim.  Thus, because MFC's improper conduct supports both Homann's contract counterclaim and breach of fiduciary duty and shareholder oppression counterclaims, the discovery he sought was relevant, or likely to lead to the discovery of relevant evidence, regardless of whether the counterclaims are dismissed.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Because the motion judge made factual findings to support his ultimate legal conclusion, the vicinage's Presiding Judge of the Civil Division should assign this case to a different judge. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3866-14T3